Welch, J.,
dissenting. I can not concur in this opinion. I see¡ no technical reason, and surely there is no reason injustice, why the county should not recover back its money, and recover it upon this bond. The reason assigned is, that the bond is founded upon-an “illegal ” consideration, or was given to enforce the performance of an “ illegal ” act. The answer to this is threefold:
1. The act complained of — paying out county money for railroad purposes — is in no sense an illegal or criminal act within the meaning of the rule of law on that subject. It was simply an unauthorized act. It involved no turpitude or immorality, and violated no-TO] penal provision of law. In fact, *it violated no provision of law. The prohibition in the constitution operates upon the legislature, and not upon the officers of the county; much less does it operate upon the county itself.
2. It was not the act of the county, the real plaintiff in this action, but the act of its agents, the commissioners. It is well known- and well settled (Carder v. Comm’rs of Fayette Co., 16 Ohio St. 369), ihat the “county commissioners” is another name for the county itself, in actions for and against the county, while in most cases it means the officers or agents of the county. It is unnecessary to say that the commissioners acted in the latter character-when they paid out this money. If the act, then, was ever so “ illegal ” or criminal, the commissioners themselves stood liable to-the county. If the agents of the county illegally, as by embezzlement, take money from the county, surely it can be recoveredvback,. and they can not be allowed to set up their own guilt as a defense. .And if they can not, it is difficult to see upon what ground their *71 accomplices in crime, especially those at whose instance it was committed and who reaped all its fruits, should fare any better. The-provision of the constitution, on which the illegality of the transaction is predicated, was intended for the protection of the people —the tax-payers — of the county against improvident appropriation of the county money by its agents. It seems to me a strange application of the rule of law referred to — the rule which denies to a guilty party an action against his accomplice in guilt — to say that a violation of this constitutional provision by the agents of the county and their accomplices shall work an injury to the people of the county, the very party for whose benefit it was inserted. This is utterly at variance with the purpose underlying that rule of law, which is, that crime shall be discouraged by refusing aid to the-guilty, and not that it shall be encouraged by permitting it to be set up as a defense against the innocent.
3. But it does not appear upon the face of the bond, or in the-matters set up in the amended petition, that either the consideration or the object of the bond was illegal, or even unauthorized. Legally and technically, the bond imports a debt, founded upon a presumed consideration, subject to be discharged upon the happening of a named condition. I know *that such is often only [71 the form of the paper, while in reality it is to be regarded in the-light of a covenant to do the act specified in the condition; and that, when it is impeached for illegality, the court will look through its-form and inquire into its real object. Lot us do so in this case. Its object was not to enforce the payment of money out of the-county treasury by the commissioners. If it had been, the bond, would have been given by them, and not to them. If it was given, to secure the performance of any act then, it was an act to be performed by the defendants. That act must have been, either the-building of a railroad, or the repayment of the money to the county. I say, in fair legal effect, it was the latter. Either object, however,, is lawful. It is certainly not unlawful to build railroads; and' although it may be unlawful to take county money to build them with — and still more unlawful to apply the money to private purposes after you have received it — it certainly is not unlawful to-refund the money to the county. It is, perhaps, therefore, entirely immaterial whether we hold the object of that bond to be the building of the road, or the repayment of the money. It can, however, in no just sense, be said to be the former. The penalty of the bond. *72 "was wholly inadequate for such a purpose, while it was just about the amount of the county money and interest. Besides, the condition is, not that so much money shall he expended on the road, or that defendants shall build the road, but that if the road shall be built the bond shall be void. The original object, the laying out of the. money upon the road was abandoned, and instead, a bond for $20,000 was taken, conditioned to be void if the road should be built. The parties had a year and more in which to reflect on this matter, and to find out their mistake. We must presume they had •done so, and that at the date of the bond they knew the law, and /that this money should be paid back to the county. If their bond will bear a ponstruction consistent with the intention to secure the restoration of the money, as honest men should have done, we are bound to give it that construction.
But if we hold that their real object was to enforce the building 72] of the road, I can not see but that they are equally ^liable. It was a lawful object, and they bound themselves in their solemn bond either to build the road or pay $20,000 to the county. What good reason is there why they should not be held to their bond, .and compelled to do one or the other. It may be true, that they /should have given an absolute bond for the $20,000. They chose not to do so, and to insist upon the insertion of a condition for their •own benefit, and that condition they now admit is wholly unfulfilled.’ They got the money, and agreed to build the road, and both these facts appear upon a bond in which they acknowledge tkem■selves indebted to the county in the sum of $20,000. Grant that it was unlawful to pay out the money to build the road, surely it was lawful to build the road with the money, after it had been paid out, ,-and to give a bond for that purpose. If it is unlawful to obtain •county money to build a county railroad, it is more unlawful to ■obtain it for that purpose and then refuse to-build the road; and it .seems to mo that a bond, binding the party to do one or the other, •ought to be held good.
If we consider the matters set up in the amended petition — as I think we must — how do the defendants stand before the court? They stand before us admitting that they fraudulently procured this money from county commissioners, whose only fault is that they too readily believed the defendants’ misrepresentations; that they violated the promise upon which the money was obtained— ■■¿hat it should be used in building the railroad; and that they now *73 propose to violate their solemn agreement under seal, either to pay the $20,000 at the end of the five years, or to build the railroad. And they set up these several wrongful acts — “illegal contract,” they call them — as a defense against an action by the county to recover the money. I can not concur in the opinion that such a defense ought to prevail.
I am unable to see that the case is varied by the fact that the funds consisted in county orders. Whether these orders were equivalent to money, is immaterial. The parties considered and treated them as money. The defendants paid them out as such, and should now be estopped from denying their validity, and thus asserting that the treasurer is liable *for wrongfully paying them at [73 maturity to their assignees, or that the latter is liable to the county, for money thus received upon orders delivered to them in payment of the defendants’ own debt.